(*Circuit Court of Cook County. In Chancery.*)

## Sperry, et al.

### vs.

### Stinson.[1]

#### (May 21, 1895.)

1. TAXES—RIGHT OF MORTGAGEE TO PAY. Taxes and assessments are a paramount lien to all others, and a mortgage lien holder, even in the absence of covenant, has the right to pay and discharge such taxes and assessments where the mortgagor fails to do so.

---

[1] Judgment reversed, 174 Ill. 125.

2. SAME—RIGHT TO REDEEM.   A. mortgage lien holder may-redeem from tax sales and buy up tax certificates and tax titles after the time for redemption had expired, paying a reasonable consideration therefor.   The amount so paid, with interest, can be recovered in the foreclosure proceedings.

3. MORTGAGEE AS PURCHASER AT TAX SALE—RIGHTS OF.   There is nothing in the mortgage contract which prevents the mortgagee from purchasing the premises at a tax sale.   But neither the mortgagor or the mortgagee are allowed to obtain any advantage, the one over the other, by reason of any such purchase, nor will such purchase be allowed to ripen into an adverse title as against the other party, or those in privity with him.

4. SAME—SEVEN YEARS' PAYMENT OF TAXES.   Nor can payment of taxes by the mortgagee or the mortgagor in possession be relied upon as payment of taxes under color of title under the seven-year Limitation Act.

5. SAME—PAYMENT OF TAXES BY MORTGAGEE.   The mortgagee has the right to pay taxes and add the amount thereof to the mortgage debt.   A purchase at a tax sale is not a payment of taxes, nor is the purchase of a tax certificate a payment of taxes or a redemption.

6. SAME—RIGHTS OF MORTGAGEE HOLDING TAX CERTIFICATE.   Where a mortgagee becomes a purchaser at a tax sale he is in the position of any other purchaser with all the incidents and obligations imposed by the statute.

7. TAXES—PAYMENT OF BY TAX PURCHASER IN SUCCEEDING YEARS.   If a mortgagee holding a tax certificate fails to pay the next year's taxes and the property is sold, the mortgagor has the right to redeem from the first sale by paying only the amount for which the land was sold.

8. SAME—RIGHTS OF MORTGAGORS.   Where a mortgagee purchases a tax certificate the mortgagor has the right of election, whether the mortgagee shall be considered as a purchaser or as holding the tax certificate for the benefit of the mortgagor.

9. TAXES—SALE OF VIGINTILLIONTH INTEREST.   The sale of a vigintillionth of certain land for the non-payment of taxes is not a cloud upon the title, and a mortgagee redeeming from such a sale cannot charge the amount so paid against the mortgagor. The maxim, *de minimus non curat lex*, applies.

10. TAX SALES.   The rule of *caveat emptor* is applicable to tax sales.

11. TENDER.   To stop the running of interest in case of a tender, the tender should be kept good by paying the money into court.

Exceptions to Masters' report.   Heard before Judge Murray F. Tuley.

For statement of facts see opinion.

*Price & Stewart,* for complainants.

*Prentice & Whitman,* for defendants.

TULEY, J.:—

The Connecticut Mutual Life Insurance Company held a bond and trust deed security, by way of mortgage made by defendant, Stinson, to Sperry *et al.,* as trustee, to secure a debt of about $15,000. In the trust deed the defendant, Stinson, covenanted to pay the debt at a time therein named, and that "also until full payment as aforesaid will pay all taxes, assessments and other charges; * * * also at once to repay all advances (which are also to be included in the sums hereby secured) made for taxes, assessments, rates, redemption from sales for taxes, assessments, or in any way otherwise to protect the security hereby given with interest thereon at eight per centum per annum."

In 1893, Stinson, the mortgagor, failed to pay certain special assessments, levied upon the ten acres of land mortgaged, and the premises were sold for one assessment on November 4, 1893, of $572.85, and on November 14, 1893, for another assessment of $686.81.

They were bid in, and a tax certificate issued to one William Mills, who was a clerk and acted for D. J. Hamilton, a tax buyer. On the 9th of December, 1893, the two certificates were transferred to the complainant, indorsed in blank in consideration of the face of the certificates and twenty-five per centum additional, making a total sum of $1,574.37, and on December 26, 1893, this bill was filed to foreclose the mortgage or trust deed security. Answer having been filed and issue joined, a reference was had to the master to take and state an account of the amount due upon the mortgage. While the matter was pending before the master on an accounting the premises were again offered for sale for taxes, and the east one vigintillionth of the premises sold on October 24, 1894, for $603.33. The purchase was made by the same party, and on the 28th of November, 1894, the certificate issued thereon was transferred in blank to complainant for $754.16, being the

face of the certificate and twenty-five per centum additional penalty.

These tax certificates were produced by complainant upon the accounting, and allowed against the defendant for the amount paid by complainant to the tax buyer, together with interest at eight per centum per annum from the time of such payment. The defendant objected to the master allowing complainant the $1,574.37 paid on the first sale, and produced a certificate of redemption of the county clerk, dated November 16, 1894, showing that the defendant had deposited in redemption from such sale the amount of the sale without any penalty, and which, by the revenue law of this state, is declared to be a sufficient redemption in a case where the land is permitted by the tax buyer or the party holding the certificate to be again sold within two years. The evidence taken before the master disclosed the fact that the mortgagee had an arrangement with the tax buyer, by which the latter was to bid in all the property in which the mortgagee was interested, a list of the same being furnished, and the mortgagee was to take the tax certificates from the tax buyer by paying the amount paid at the sale with the accrued penalties; the tax buyer was also to be guaranteed from loss by reason of any such purchase. This arrangement was unknown to the mortgagor.

On the 6th day of December, upon the hearing before the master, the defendant tendered to the attorney of the mortgagee, the sum of $16,972.75 in full of all claims under the mortgage. It is not claimed that if the amounts paid by the mortgagee for tax certificates in 1893 and 1894 are excluded from the computation, that the tender made at that time was not sufficient, so that upon the exceptions the only questions are, as to the right of the mortgagee to be allowed for moneys claimed by him to have been paid for the certificates of purchase, and as to the effect of the tender.

Taxes and assessments are a paramount lien to all others, and a mortgage lien holder independent of any covenants in the mortgage has the right, the mortgagor failing to do so, to pay and discharge such taxes and assessments. He may also

redeem from tax sales and buy up tax certificates after the time for redemption has expired, and also tax titles, paying therefor a reasonable consideration. The amount so paid with interest can be recovered in the foreclosure proceedings. Jones, Mortgages, sec. 358; *Wright v. Langley,* 36 Ill. 381; *Pratt v. Pratt,* 96 Ill. 184; *Windett v. Union Mut. Life Ins. Co.,* 144 U. S. 581.

Upon an examination of the foregoing cited authorities it will be seen that as to the questions involved, the express covenants of the mortgagor give no additional power to the mortgagee beyond what it would have had, had no such covenants existed.

. There can be no question but that a mortgagee may, if he choose so to do, become the purchaser of the mortgaged premises at a tax sale. There is nothing in the mortgage contract which raises an express trust relation between the parties, trust relations being only implied under certain circumstances by a court of equity in order to carry out the real contract between the parties. And a purchase by a mortgagee at a tax sale as against all the world, except the mortgagor and those in privity with him, may ripen into a paramount title and cut off all other interests. But the mortgagor and the mortgagee, as to their dealings with each other, or with the mortgaged property, the law requires, that the same should be open and fair and in good faith; neither the mortgagor nor the mortgagee will be allowed to obtain any advantage, the one over the other by reason of any purchase at a sale of the mortgaged premises for taxes, nor will such purchase be allowed to ripen into an adverse title as against the other party, or those in privity with him. *Moore v. Tiltman,* 44 Ill. 367; *McAlpine v. Zitzer,* 119 Ill. 273.

Nor can payment of taxes by the mortgagee or the mortgagor in possession be relied upon as payment of taxes under color of title under our seven years limitation act. *Chickering v. Failes,* 26 Ill. 508; *McAlpine v. Zitzer,* 119 Ill. 273.

The mortgagee in this case could have pursued a plain and straightforward course by paying the taxes and have added the sum, together with eight per centum interest to his mort-

gage debt, or he could have redeemed from any tax sale. He might, under the arrangement made with the tax buyer, be considered the actual purchaser, for equity regards the substance, not the form of the transaction, but a purchase at a tax sale is not a payment of the taxes, nor is the purchase of a tax certificate either a payment of taxes, or a redemption. Whether the mortgagee is to be regarded as a purchaser at the tax sale, or as the assignee in blank of the tax certificates he occupied the position of a tax purchaser with all its incidents and obligations imposed by the statute concerning sales for taxes.

The mortgagee holding the tax certificates was bound to pay the next year's taxes, but failing to do so, and the property being again sold for taxes, the statute gave the mortgagor the right to redeem from the first sale by paying only the amount for which the land was sold. The mortgagor in so doing exercises only a statutory right, and there is nothing in the mortgage relation or in the provisions of the mortgage which would prevent his doing so.

If the mortgagee chose to occupy the position of a tax sale purchaser, or the holder of tax sale certificates, indorsed in blank, which could be transferred at any moment to an innocent purchaser, he can not complain if the mortgagor exercises his legal right and makes redemption under the statute. It was as easy to the mortgagee to have exercised the plain right given him by the mortgage of paying these taxes as for him to become a purchaser directly or indirectly. See *Williams v. Townsend,* 31 N. Y. 411; *Maxfield v. Willey,* 46 Mich. 252, 9 N. W. 271; *Jones v. Wells,* 31 Mich. 170.

The evidence shows that the mortgagee took up the tax certificate from the tax purchaser after being notified by the mortgagor not to do so, but as has been said as to the other two certificates, whether he is to be treated as a purchaser at the tax sale, or as a purchaser of the tax certificates after the sale, is immaterial as in either case, he occupies the position of a tax purchaser and with all the rights of a tax purchaser, and all the incidents attaching to the purchase. The right to say whether he shall be considered as purchasing or holding the

tax certificate for the benefit of the mortgagor, is a personal right of the mortgagor. *Jones v. Wells,* 31 Mich. 170; *Maxfield v. Willey,* 46 Mich. 252, 9 N. W. 271.

The mortgagor not objecting, the mortgagee may, as tax purchaser, obtain a paramount title, certainly as against all parties who do not claim by or under the mortgagor. The mortgagor has the right to say to the mortgagee on his becoming a tax purchaser, ''You have chosen in place of paying the tax, or redeeming from the tax sale, to occupy the position of holder of a tax certificate, and I make no objection thereto; whether your purchase shall be considered as made for my benefit is my personal right, and I do not desire to claim it.''

The contention of the mortgagee is, that the vigintillionth certificate was purchased in order to remove a cloud upon the property, and that by the express language of the mortgage, the mortgagee has a right to advance moneys necessary to remove clouds upon the title. But was this any cloud upon the title to the mortgaged premises, which it was necessary for the mortgagee to remove? It would seem clear that if ejectment would not lie for a vigintillionth of this land, that it would not be considered a cloud. In ejectment the thing sought to be recovered must be visible, a tangible something, which, in early times, would be capable of livery of seizin, and upon which an entry could be made; something capable of physical possession, and of which the owner could be disseized, and of which possession can be delivered by the sheriff to the plaintiff. Tyler on Ejectment and Adverse Possession, p. 37; Sedgwick & Wait, Trial of Title to Land, sec. 97.

The mind is scarcely capable of comprehending what an east vigintillionth of a ten acre tract of land would be. It certainly would not be visible to the naked eye; it would not be equal to a line drawn by the finest pointed needle ever made. Its width would be a line so fine that the most powerful magnifying glass ever made could not discover it; it would be utterly incapable of physical possession. A writ commanding the sheriff to put a tax title buyer in possession of a vigintillionth off the east side of this tract of land, would not only be incapable of execution, but would be an absurdity

upon its face. The law does not regard infinitesimals, and the maxim—*de minimis non curat lex* would be applicable in any case where this vigintillionth was involved.

A vigintillionth: 1-1,000,000,000,000,000,000,000,000,000,000,-000,000,000,000,000,000,000,000,000,000,000,000,000th.

No principle can be discovered upon which the doctrine of subrogation can be applied in this case.

The rule of *caveat emptor*, let the purchaser beware, is peculiarly applicable to buyers at tax sales. Having made his contract, what right has he because it is a bad bargain, to ask to be subrogated to the lien of the state as to the whole land for the amount of taxes paid? The court knows of no principle of equity which would entitle him to any relief from his contract.

If one having a chattel mortgage upon a thousand barrels of flour, finds it levied on and advertised for sale on a prior judgment against the mortgagor, say for $1,000, attends the sale, and because of foolish competition, bids on one barrel of flour the thousand dollars due on the judgment, what right of equity would there be in his claimng to be subrogated to the judgment creditor's lien against the other 999 barrels of flour, which was discharged by the sale of the one barrel. A court of equity would say to him, as must be said to the mortgagee in this case: "You must stand the consequences of your own improvidence or folly." The defendant's exceptions as to the allowance by the master of the amounts paid for the three certificates of purchase must be sustained.

The defendant's exceptions as to the three assessments and tax certificates being sustained, it follows that the tender made by the defendant on the hearing before the master was sufficient, but, in order to stop the running of interest, the tender should have been kept good by paying the money into court. The only effect that can be given the tender will be to charge the complainant with all the costs accruing subsequent to the tender.

Counsel may be able to agree as to amount of such costs; if not, the court will determine.

Let an order be prepared in accordance with this opinion,

but let it provide that complainant have leave to withdraw the tax certificates.

NOTE.—In *Petty v. Beers* (Appellate Court, 1st District, 1906), it was held that a deed purporting to convey one vigintillionth part of a tract of land is a nullity, and conveys no title.